**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DAVID E. CLOWSER,** ) | **CASE NO. 1:10CV1506** |
| ) | |
| Plaintiff, ) | |
| ) | **MAGISTRATE JUDGE GREG WHITE** |
| v. ) | |
| ) | |
| **MICHAEL J. ASTRUE, Commissioner** ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | **MEMORANDUM OPINION & ORDER** |

Plaintiff, David E. Clowser ("Clowser"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Clowser's claim for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), *et seq*. This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is affirmed.

**I. Procedural History**

On March, 31, 2005, Clowser filed an application for POD and DIB alleging a disability onset date of October 24, 2002, and claiming that he was disabled due to neck, back, and left arm pain. (Tr. 44-46, 960.) His application was denied both initially and upon reconsideration. Clowser timely requested an administrative hearing.

On June 18, 2008, an Administrative Law Judge ("ALJ") held a hearing during which Clowser, represented by counsel, testified. Ted Macy, an impartial Vocational Expert ("VE") also testified. On September 19, 2008, the ALJ found Clowser was able to perform a significant

number of light level, unskilled jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

## II. Evidence

### *Personal and Vocational Evidence*

Age 40 on December 31, 2007, the date he was last insured, Clowser is a "younger" person under social security regulations. *See* 20 C.F.R. § 404.1563(c). Clowser has a high school education and past relevant work as a roofer, insulation installer, and landscape laborer. (Tr. 25.)

### *Medical Evidence as to Mental Impairments*

Clowser disputes only the ALJ's decision regarding his mental limitations; specifically, the ALJ's failure to find borderline intellectual functioning ("BIF") as a severe impairment.

In April 2005, Clowser underwent a psychological evaluation by Richard N. Davis, Ph.D., at the request of the state agency. (Tr. 580-585.) Clowser reported the following to Dr. Davis: (1) he was applying for Social Security benefits because of herniated discs in his neck due to a job injury (Tr. 580); (2) his goal was to get his "back and neck fixed and get back to work" (Tr. 583); (3) he had a driver's license and drove himself to the appointment with Dr. Davis (Tr. 580); (4) he obtained a driver's license on his first attempt (Tr. 580); (5) he graduated from high school, in regular classes, receiving B and C grades (Tr. 581); (6) he is dyslexic and, as a result, does not read (Tr 581, 583); and, (7) he wanted to get back to work because not working was the reason for his depression. (Tr. 584.)

Dr. Davis found that Clowser appeared somewhat depressed, although his thought process and content appeared normal. (Tr. 582-583.) Intellectually, Dr. Davis found that Clowser appeared to be functioning at the middle to upper part of the borderline range. (Tr. 584.) He diagnosed Clowser with adjustment disorder and BIF, but found that he could perform simple, repetitive tasks. *Id*. Specifically, in terms of work-related mental abilities, Dr. Davis found that Clowser did not indicate having problems getting along with fellow workers and supervisors as a rule when he was employed, was able to understand and follow directions and

function at tasks, was able to perform fairly simple repetitive tasks at most situations during his employment years, and satisfactorily dealt with work stressors and pressures of employment. (Tr. 585.)

In July, 2005, a state agency reviewing psychologist, Carl L. Tishler, Ph.D., reviewed the record and found that even though Clowser appeared to be of borderline intelligence, he was able to perform simple, routine tasks in low-stress settings with limited contact with the general public. (Tr. 604.) Dr. Tishler referred to Dr. Davis' findings in support of his assessment. *Id.* In November 2005, Roseann F. Umana, Ph.D., a state agency reviewing psychologist, affirmed Dr. Tishler's assessment. *Id*.

In October, 2005, Clowser's treating physician, Dilbagh Saini, M.D., diagnosed depression, alcohol dependence in full remission, and a personality disorder, NOS. (Tr. 636-637.)

In December, 2006, Clowser's psychiatric treatment counselor indicated that Clowser refused vocational referrals, stating that it would hamper his chances with worker's compensation and applying for Social Security disability. (Tr. 709-710.)

From September, 2007, through April, 2008, Clowser's treating psychiatrist, Raul Hizon, M.D., diagnosed social anxiety disorder, major depression, alcohol dependence in remission, and personality disorder. (Tr. 796-808; 864-876.) Dr. Hizon prescribed several medications including Xanax, Zoloft, and Sertraline. *Id.*

In May, 2008, Dr. Hizon completed a mental residual functional capacity questionnaire. (Tr. 858-863.) After assessing numerous mental functioning skills, Dr. Hizon found that Clowser had an unlimited or very good mental ability to do unskilled and semi-skilled work. (Tr. 860-861.) Dr. Hizon's sole limitation was that Clowser should avoid public places due to the recurrence of anxiety symptoms. Accordingly, he checked off the box that Clowser had "seriously limited, but not precluded" ability to interact appropriately with the general public. (Tr. 861.) Dr. Hizon further found that Clowser had, at most, mild functional limitation in daily living activities, maintaining social functioning; maintaining concentration, persistence, and pace; and, that he had no episodes of decompensation of at least two weeks duration within a

3

twelve-month period. (Tr. 862.)

In November, 2008, approximately two months after the ALJ's September 19, 2008, decision, James M. Medling, Ph.D., performed a consultative psychological evaluation and I.Q. testing at the request of Clowser's attorney. (Tr. 946-952.) Based on this testing, Clowser's Verbal I.Q. was determined to be 69, his Performance I.Q., 93, and his Full Scale I.Q., 78. (Tr. 950.) Dr. Medling diagnosed Clowser with BIF. (Tr. 950-951.) He noted that in considering the levels of impairment in Clowser's areas of functioning, the doctor believed that the "combined effects result in a high-moderate, if not marked, level of overall impairment that renders [Clowser] a very marginal to poor return to work candidate in any capacity." (Tr. 952.)

*Hearing Testimony*

At the hearing, Clowser testified to the following:

- He has a high school education obtained in special education classes. (Tr. 956-957.)

- He cannot read and does not understand English. He took the written driver's test eight times before he passed it. (Tr. 969, 970.)

- He has no outside activities and does nothing during the day other than watch television and smoke. (Tr. 969.)

The ALJ posed the following hypothetical to the VE:

Consider an individual situated as the claimant's age, education and work experience who is restricted to light work. Such an individual can only occasional [sic] climb, balance, stoop, crouch, kneel or crawl. Such an individual is limited to unskilled work and only occasional contact in interaction with the public, co-workers and supervisors. Any jobs such an individual can perform, and that would include past relevant work?

(Tr. 972-973.)

The VE testified that such an individual could not perform Clowser's past relevant work, but could perform some jobs, including work as a bench assembler[1] at the light, unskilled level (1,000 jobs in northeast Ohio; 200,000 nationally); wire worker[2] at the light, unskilled level

---

[1] The DOT reference number for bench assembler is 706.684-022.

[2] The DOT reference number for wire worker is 728.684-022.

4

(1,200 jobs in northeast Ohio; 190,000 nationally); and final assembler[3] at the sedentary, unskilled level (700 jobs in northeast Ohio; 100,000 nationally). (Tr. 973.)

The ALJ then asked the VE: "what if such an individual can use the left upper extremity and that's the non-dominant extremity occasionally?" *Id.* The VE testified that the individual could still perform the jobs previously listed. *Id.*

The ALJ asked the VE to account for such an individual being restricted to sedentary work. *Id.* The VE responded that the number of positions available would be reduced for the bench assembler (400 jobs in northeast Ohio; 70,000 nationally) and wire worker (500 jobs in northeast Ohio; 70,000 nationally), but the final assembler numbers would remain the same. (Tr. 973-974.)

The ALJ next asked what jobs would be available if that same individual was classified as illiterate. (Tr. 974.) The VE testified that this would have no affect. *Id.*

Finally, the ALJ asked the VE to determine what jobs would be available if such individual was off task ten percent of the time. *Id.* The VE testified that under such circumstances there would be no work. *Id.*

### III.  Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[4]

---

[3] The DOT reference number for final assembler is 713.687-018.

[4] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended.  42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Clowser was insured on his alleged disability onset date, October 24, 2002, and remained insured through December 31, 2007.  (Tr. 19.)  Therefore, in order to be entitled to POD and DIB, Clowser must establish a continuous twelve month period of disability commencing between those dates.  Any discontinuity in the twelve month period precludes an entitlement to benefits.  *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F. 2d 191, 195 (6th Cir. 1967).

### IV.  Summary of Commissioner's Decision

The ALJ found Clowser established medically determinable, severe impairments, due to a history of cervical disc herniation with remote left radiculopathy, a history of headaches, and depression with anxiety; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Clowser was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light, unskilled work.  The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Clowser is not disabled.

### V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or

---

experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled.  For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).") This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must consider whether the proper legal standard was applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

Clowser asserts that the ALJ erred in not finding his BIF to be a severe impairment as it limits his ability to perform basic work activities. (Doc. No. 12 at 4.) Clowser relies on mental examinations performed by Dr. Davis and Dr. Medling, both of whom diagnosed BIF. Furthermore, he asserts that the reviewing state agency doctors concluded the same. (Doc. No.

12 at 5-6; Doc. No. 14 at 2.) Clowser also argues that the Court should consider the I.Q. testing done by Dr. Medling to determine if he meets or equals Listing 12.05(C). (Doc. No. 14 at 3.) Specifically, Clowser maintains that because his verbal I.Q. test score of 69 is within the range of Listing 12.05, the case must be remanded for evaluation of how his BIF, in combination with his other severe impairments, affects his ability to perform substantial gainful activity. (Doc. No.14-3.)

The Commissioner contends that even considering Clowser's diagnosis of BIF in April, 2005, there is substantial evidence to support the ALJ's decision. (Doc. No. 13 at 8-14.) The Commissioner also argues that because the records from Dr. Medling post-date the ALJ's decision, the Court cannot consider them for the purpose of substantial evidence review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Evidence first submitted to the Appeals Council, may be considered only to determine whether the case should be remanded under section six of 42 U.S.C. § 405(g). *Cline*, 96 F.3d at 149; *Cotton v. Sullivan*, 2F.3d 692, 696 (6th Cir. 1993); *Washington-Wheeler v. Comm'r of Soc. Sec.*, 2010 WL 376329, *1 (fn. 2) (E.D. Mich. Jan. 26, 2010). Dr. Medling evaluated Clowser's condition in November, 2008, approximately two months after the ALJ's decision, and nearly one year after his insured status expired. Therefore, Dr. Medling's evaluation may not be considered by this Court as part of its substantial evidence review. *See Cotton*, 2 F.3d at 696; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry.")

At step two of the disability analysis, the Commissioner must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). To determine if a claimant has a severe impairment, the ALJ must find that an impairment, or combination of impairments, significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). An "impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be

8

established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [claimant's] statement of symptoms." 20 C.F.R. § 404.1508. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) "[u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers, and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

The Sixth Circuit construes the step two severity regulation as a "*de minimis* hurdle," *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007), intended to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). Thus, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ must treat it as "severe." S.S.R. 96-3p, 1996 WL 374181 at *1. After the ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" S.S.R. 96-8p, 1996 WL 374184, at *5. When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz*, 837 F.2d at 244; *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. Appx. 574, 576-577 (6th Cir. 2009).

Assuming *arguendo* that the ALJ should have found Clowser's mental impairments to be severe, it is not reversible error. As will be shown, the ALJ's consideration of the cumulative effect of Clowser's impairments (both severe and non-severe) throughout the remaining steps of the analysis, rendered any such error harmless. *Maziarz*, 837 F.2d at 244.

At the third step of the analysis, the ALJ found that Clowser's impairments did not meet or medically equal one of the listings. The ALJ discussed Clowser's mental impairments, including BIF and depression/anxiety as follows:

> Although it is alleged that the claimant obtained his high school education in special education, the evidence shows that the claimant has been found to have an IQ of 78 upon intelligence testing and he is not in the mentally retarded range of intellectual functioning. The evidence further shows that although the claimant does have some depression and anxiety, these impairments do not meet or

9

       medically equal the requirements of medical listings 12.04 or 12.06 of Appendix 1. The claimant does not have two or more marked limitations under the B criteria of these listings.

(Tr. 20.) The ALJ further discussed whether Clowser's mental impairment met or medically equaled Listing 12.04 (Affective Disorders). He found that Clowser did not meet the paragraphs B or C criteria as he did not have at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. (Tr. 20.)

      Specifically, regarding BIF, Listing 12.05, 20 C.F.R. Pt. 404, Subpt. P, App. 1, states as follows:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; **OR**
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; **OR**
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function; **OR**
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>     1. Marked restriction of activities of daily living; or
>     2. Marked difficulties in maintaining social functioning; or
>     3. Marked difficulties in maintaining concentration, persistence, or pace; or
>     4. Repeated episodes of decompensation, each of extended duration.

A claimant must demonstrate that his impairment satisfies the diagnostic description for the listed impairment in order to be found disabled. *Id.* at § 12.00(A). A claimant will meet the listing for mental retardation only if the impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria. *Id.*

      Clowser has not demonstrated that he meets any of the requirements of listing 12.05(A)-(D). There is no evidence in the record that Clowser is dependent upon others for personal

needs. Further, the record before the ALJ set forth that Clowser's I.Q. is 78. Even if the Court considers Clowser's I.Q. to be under 71, he has not shown that he has any marked limitations or repeated episodes of decompensation. As to the (C) criteria, the ALJ specifically took into consideration the possibility of BIF along with his other severe impairment and concluded:

> It is found that the evidence in this matter supports a finding that the claimant has the ability to perform light work with only occasional use of the left arm for all functions. The claimant is also limited to unskilled work as a result of his history of possible borderline intellectual functioning and his depression and anxiety. The claimant should avoid working at a job which would involve more than occasional interaction with the public, coworkers and supervisors.

(Tr. 24.)

Even though Dr. Davis diagnosed Clowser with BIF in April 2005, he nevertheless found him capable of performing simple, repetitive tasks. (Tr. 584-585.) Dr. Davis also noted that Clowser was able to understand and follow directions and function at tasks. (Tr. 585.) As to the four work-related mental abilities, Dr. Davis related as follows:

> 1. [Clowser] didn't indicate problems getting along with fellow workers and supervisors as a rule when he was employed.
>
> 2. He was able to understand and follow directions and function at tasks.
>
> 3. He performed at fairly simple repetitive tasks at most employment situations during his employment years.
>
> 4. He satisfactorily dealt with the stresses and pressures of employment. Eventually the physical problems necessitated his having to leave.
>
> 5. If he is granted benefits, he is capable of money management.

(Tr. 585.)

Furthermore, the mental residual functional capacity assessment, along with the psychiatric review technique performed by the state agency reviewing psychiatrist in July, 2005, is consistent with Dr. Davis's findings. Dr. Tishler indicated an assessment of BIF, but as to the "B" criteria of functional limitations, he found Clowser to have mild limitations on restrictions of activities of daily living, moderate limitations regarding difficulties in maintaining social functioning and maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 616.) In November, 2005, Dr. Umana, affirmed Dr. Tishler's findings. (Tr. 604, 606.)

11

More importantly, no treating psychiatrist diagnosed Clowser with BIF. In fact, on May 27, 2008, Dr. Hizon assessed Clowser to have an "unlimited or very good" mental ability to do unskilled work, as well as semi-skilled and skilled work. (Tr. 861.) Specifically, Dr. Hizon indicated that Clowser had "unlimited or very good" mental abilities in each of the sixteen areas needed to do unskilled work, such as understanding and remembering short and simple instructions. (Tr. 860.) Clowser was also found to be able to understand, remember, and carry out detailed instructions, set realistic goals, and make plans independently of others, as needed to perform semi-skilled and skilled work. (Tr. 861.) Furthermore, consistent with the ALJ's decision, Dr. Hizon limited Clowser's ability to interact with the general public, explaining that he should avoid public places due to the recurrence of anxiety symptoms. (Tr. 860-861.)

Even though the ALJ did not specifically name listing 12.05 at step three, his conclusion was based upon proper legal standards and he appropriately considered the cumulative effect of Clowser's BIF. Substantial evidence supports the ALJ's finding that his BIF would not limit him beyond unskilled work.

At the next step in the disability analysis, when calculating the RFC, the ALJ thoroughly considered Clowser's mental impairments, as follows:

> The claimant has a significant history of treatment for anger management issues and depression. The record contains a report of a psychiatric evaluation performed on the claimant on December 6, 1999 by Dr. Enrique Huerta, a psychiatrist. In this report (exhibit11F) Dr. Huerta diagnosed the claimant as having depression and a history of alcohol abuse. Treatment notes from the Nord Center reveal that the claimant received counseling in 2000 for anger management (exhibit 11f).
>
> The claimant underwent a psychological evaluation on April 25, 2005, by a psychologist, Richard Davis. In this report (exhibit 22F), the psychologist states that the claimant's diagnosis was an adjustment disorder and borderline intellectual functioning. The claimant's current global assessment of functioning (GAF) score was estimated to be 55. The claimant received counseling for anger management and depression at the Nord Center from 2005 through 2007. A note dated December 12, 2006 is of particular interest. On this date, it was noted that the claimant refused vocational rehabilitation referral stating that it would hamper his chances with workmen's compensation and he was applying for social security. The claimant said he was able to work but would "occasionally" have some neck pain and then he felt that he was not able to work up to full capacity. He stated that he was told by his lawyer not to seek full employment (exhibit 41F at p. 6.)
>
> On September 10, 2007 the claimant underwent a psychiatric evaluation at the Far

12

> West Center by Dr. Raul Hizon, a psychiatrist. This report (exhibit 50F at p.12) states that the claimant's diagnosis was an adjustment disorder and a personality disorder. His current GAF score was estimated to be 50. Dr. Hizon completed a mental residual functional capacity assessment for the record. In this report, dated May 27, 2008 (exhibit 52F at p.2), Dr. Hizon states that the claimant has social anxiety, depression and a personality disorder. In this report, Dr. Hizon states that the claimant avoids public places due to anxiety, however, Dr. Hizon does not indicate that the claimant has any limitations whatsoever in his functional abilities. The only limitation noted by Dr. Hizon was that the claimant had a serious limitation, but not a total exclusion, in his ability to interact with the general public. Dr. Hizon states that the claimant has no limitations in his activities of daily living, in his social functioning, or in his ability to maintain concentration, persistence and pace.
>
> * * *
>
> The claimant has a history of anger management problems, a history of alcohol abuse, now in remission and a history of depression and anxiety. The evidence does not document that the claimant has had any severe episodes of depression since the alleged onset date of disability. He has received counseling over the years and the treatment notes indicate that he has functioned adequately. The claimant testified that he does nothing during the day and avoids shopping due to being adverse to crowds. The claimant's testimony was contradictory in that he stated that he could walk 1-2 miles and stand 1-2 hours and then later stated that he would have a "bad" day 4 days a week and when having a bad day, he could not do anything. The claimant's testimony as to his severe limitations is not consistent with the functional capacity evaluation which was performed on the claimant on February 17, 2005. This evaluation found that the claimant had the ability to perform light work (exhibit 21F). The evidence documents that the claimant does have a history of treatment for anger management and depression. However, the record does not reveal that the claimant is prevented from the performance of all basic work-related activities as a result of these problems. It is noteworthy that a treating psychiatrist, Dr. Hizon, found in the mental assessment report that he submitted, that the claimant had virtually no significant mental limitations except for a moderate limitation in the ability to interact with the general public.

(Tr. 23-24.) Taking Clowser's physical and mental impairments into consideration, the ALJ properly concluded that Clowser has the ability to perform light, unskilled work, but should avoid working at a job involving more than occasional interaction with people.

At the fifth step, the ALJ considers a claimant's RFC, age, education, and past work experience to determine if he can do any work. 20 C.F.R. § 404.1520(a)(4)(v). A hypothetical question must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs*., 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of*

13

*Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible. *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993)). However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence. *See Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994).

At the fifth step of the analysis, based on the RFC calculation, the ALJ presented the following hypothetical to the VE:

> Consider an individual situated as the claimant's age, education and work experience who is restricted to light work. Such an individual can only occasional [sic] climb, balance, stoop, crouch, kneel or crawl. Such an individual is limited to unskilled work and only occasional contact in interaction with the public, co-workers and supervisors. Any jobs such an individual can perform, and that would include past relevant work?

(Tr. 972-973.)

The VE testified that such an individual could not perform Clowser's past relevant work, but gave some examples that he could work as a bench assembler at the light, unskilled level (1,000 jobs in northeast Ohio; 200,000 nationally); wire worker at the light, unskilled level (1,200 jobs in northeast Ohio; 190,000 nationally); and final assembler at the sedentary, unskilled level (700 jobs in northeast Ohio; 100,000 nationally). (Tr. 973.) When questioned whether an illiterate person could perform such jobs, the VE testified that such a classification would have no effect. The ALJ properly considered all of Clowser's impairments in the fifth step.

Furthermore, Dr. Medling's report does not warrant a remand under sentence six of 42 U.S.C. § 405(g). Such a remand requires a showing of both materiality and good cause. Clowser has argued neither. A remedy remains, however, as Clowser may initiate a new claim for benefits if his condition has indeed changed. *See Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988).

After careful consideration of the record, the Court concludes that the ALJ did not err in

finding that Clowser's BIF was not a severe impairment.  The ALJ considered at each step of the disability analysis, the cumulative effect of Clowser's severe and nonsevere impairments, and properly found him to be capable of a range of light, unskilled work.

### VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner supported by substantial evidence.  Accordingly, the decision of the Commissioner is affirmed and judgment is entered in favor of the defendant.

IT IS SO ORDERED.

                                                  s/ Greg White
                                                  United States Magistrate Judge

Date:  June 22, 2011